**James v. Carlson**

*John Eberly,* for plaintiffs.
*Harold Hampson,* for defendant.

WOLFE, P. J., September 12, 1974.—Plaintiffs seek a preliminary injunction so they may continue oil and gas exploration and operations on a leasehold interest as assigned to plaintiffs on August 10, 1967. Mill Creek Gas and Oil Company is a partnership composed of the plaintiffs.

The original oil and gas lease was executed by defendant on July 17, 1964, granting unto Clyde W. Elder and Clyde W. Elder, Jr., as joint tenants with right of survivorship and not as tenants in common, a ten-year lease to operate and explore for oil and gas and, "as much longer thereafter as oil or gas is found in paying quantities or the rental is paid thereon."

It has not been established as a matter of record but the testimony concludes that Clyde W. Elder, Sr., died and his interest in the oil and gas lease would, therefore, vest, as a matter of law, in Clyde W. Elder, Jr., who made the assignment on August 10, 1967, to Mill Creek Gas and Oil Company.

Defendant raised a preliminary objection that plaintiffs have no standing to bring these injunctive proceedings because C. W. Elder, Jr., did not execute the original lease of July 17, 1964, and, therefore, had no standing to execute the assignment of August 10, 1967, as he was not bound by the terms and obligations

of the original lease to him and his father by defendant. We overruled the objection on the grounds we are of the opinion that at the death of the lessee, Clyde W. Elder, Sr., all rights to the leasehold would vest in Clyde W. Elder, Jr., as surviving tenant with the right of survivorship which is an assignable property right notwithstanding he did not execute the original lease as one of the lessees. C. W. Elder, Sr., did execute the lease as a joint tenant with C. W. Elder, Jr., thereby binding the lessees. The only reservation we have is that a proper certificate of death of C. W. Elder, Sr., must be filed in the Court of Common Pleas of the Thirty-seventh Judicial District to show proper title in plaintiffs to bring the within action.

Going to the merits of the case, the evidence established defendant physically barred plaintiffs from removing any of their equipment from the leasehold by blocking the driveway. This action was taken on behalf of defendant under her belief the one-eighth royalty she was receiving from the production is insufficient to pay the taxes on her property and also plaintiffs were causing timber damage and road damage to her land.

Plaintiffs' testimony established the following production from the lease:

           1971—1,547  barrels
           1972—  746  barrels
           1973—  442  barrels
           1974—  145  barrels (to date)

Plaintiffs' expenses to operate the lease are currently running at $50 for the payment of a pumper and other miscellaneous expenses. Plaintiff testified that currently there are three wells pumping oil and he intends to clean out other wells and drill new wells to increase

production, since the price of crude oil has risen to slightly over $10 a barrel.

The only issue we have to resolve is whether the lease is producing gas and oil in paying quantities. The ten-year initial period has expired and the appellate courts have interpreted the language "found or produced in paying quantifies" means paying quantities to the lessee or operator and not to the lessor: Young v. Forest Oil Company, 194 Pa. 243 (1899). It is here held that if a well pays a profit, albeit a small one, over the operating expenses, it is producing in "paying quantities" and this, notwithstanding it may never repay its cost, and the operation as a whole may result in a loss.

A review of the lease does not provide for any damage done to timber or the land; however, this is not the issue before us and could be resolved in a separate action for damages if defendant desires to pursue it.

Since there is no doubt production is in paying quantities to date and there is no evidence plaintiffs have abandoned the leasehold but on the contrary are producing it and intend to expand operations and the evidence concluding defendant has blocked access to the leasehold the preliminary injunction must be granted and we enter the following decree nisi:

## DECREE NISI

And now, September 12, 1974, defendant, her heirs, assigns, employes, servants and agents are directed to remove any obstacles prohibiting reasonable ingress, egress and regress to and from the property subject to the lease or from in any way interfering with the operations of plaintiffs in the production of the leasehold.

Plaintiffs are to exercise their rights under the leasehold in good faith and to take all necessary steps to prevent any damage to the land due to roads or damage to the standing timber.

Defendant is granted 20 days from the date hereof to file an answer to the complaint to join the ultimate issue after which a hearing date will be set at the request of either party if the issue has not been settled between them.

In the event exceptions are not taken to the within decree nisi within 20 days from the filing date hereof, the decree nisi shall become absolute and the prothonotary is so directed to enter the adjudication in accordance with Rule 1519 of the Pennsylvania Rules of Civil Procedure.